**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**THE UNITED STATES OF AMERICA**</td><td></td><td>**Crim. No.  RDB-06-434**</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**v.**</td><td></td><td>**Civil No.**</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>**DARRYL HARCUM**</td><td>*</td><td></td></tr>
</table>

**\* \* \* \* \***

**MOTION TO CORRECT**
**SENTENCE UNDER 28 U.S.C. § 2255**

**INTRODUCTION**

Petitioner, Darryl Harcum, through undersigned counsel, James Wyda, and Paresh S. Patel, Appellate Attorney, respectfully moves this Court to set aside the judgment in this case and correct his sentence, pursuant to 28 U.S.C. § 2255. On June 6, 2010, this Court sentenced Mr. Harcum as an armed career criminal under 18 U.S.C. § 924(e) (ACCA). One of the three prior convictions that subjected him to an ACCA sentence was his 2003 conviction for Maryland second degree assault. However, in light of the Supreme Court's recent decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and the Fourth Circuit's subsequent decision in *United States v. Royal*, 731 F.3d 333, 340-42 (4th Cir. 2013), the Fourth Circuit held that under the elements-driven categorical approach of *Descamps*, Maryland second degree assault can no longer qualify as a "violent felony." *Id.* Thus, Mr. Harcum does not have the three necessary predicate convictions (either "violent felonies" or "serious drug offenses") to qualify him as an armed career criminal. As such, Mr. Harcum's current sentence of 180 months is not only in violation of the laws of the United States but is in excess of the 10-year statutory maximum for his federal offense of being a felon in possession of a firearm. Allowing this sentence to remain

intact further violates Mr. Harcum's right to due process and results in a fundamental miscarriage of justice.

Mr. Harcum's petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Descamps* – a ruling which established a "newly recognized" right that is "retroactively applicable to cases on collateral review." Mr. Harcum respectfully requests that this Court grant this motion, vacate his current sentence, and resentence him. As grounds for this motion, Mr. Harcum states as follows.

## STATEMENT OF FACTS

Mr. Harcum's Original Sentence

On May 15, 2007, a jury found Mr. Harcum guilty of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On August 30, 2007, this Court sentenced Mr. Harcum to a total term of 235 months imprisonment after finding that he was an armed career criminal under 18 U.S.C. § 924(e). This Court found Mr. Harcum to be an armed career criminal after the presentence report established that he had three prior predicate convictions in Maryland state courts that qualified as either "serious drug offenses" or "violent felonies" under the ACCA. 18 U.S.C. § 924(e). These convictions consisted of the following:

1.    2003 second-degree assault;

2.    2003 possession with intent to distribute a narcotic drug;

3.    2005 manufacturing, distributing, or dispensing a narcotic drug.

This Court's application of the ACCA to Mr. Harcum subjected him to a statutory mandatory minimum sentence of 15 years and resulted in a Sentencing Guidelines range of 235 to 293 months (offense level 33, criminal history category VI). Without an ACCA finding, Mr. Harcum's Guidelines range would have been 100 to 125 months (offense level 24, criminal

history category VI), and he would have been exposed to a maximum statutory penalty of 10 years. *See* 18 U.S.C. § 924(a)(2).

Mr. Harcum's Appeal and Resentencing

On August 31, 2007, Mr. Harcum filed a notice of his appeal challenging the classification of his 2003 second degree assault conviction as a "violent felony." Specifically, Mr. Harcum – operating under the pre-*Descamps* law concerning the modified categorical approach – contended that the sentencing court erred in relying on a Maryland state district court statement of charges to conclude that his prior second degree assault conviction was a "violent felony," when the statement of charges was replaced by a circuit court information – a different charging document in a different court. The Fourth Circuit agreed with Mr. Harcum and vacated his sentence. *See United States v. Harcum*, 587 F.3d 219 (4th Cir. 2009).

On remand, after the government introduced a guilty plea transcript from Mr. Harcum's earlier second degree assault case, the district court again sentenced him as an armed career criminal, but imposed a sentence of 180 months imprisonment. At his resentencing, Mr. Harcum argued that regardless of the guilty plea transcript, his second degree assault conviction categorically failed to qualify as a "violent felony" because it was missing the elements necessary to constitute a "violent felony." Nonetheless, the district court rejected Mr. Harcum's sentence and imposed an ACCA sentence. Mr. Harcum raised the same issue on appeal, but the Fourth Circuit also rejected it and affirmed his sentence on December 15, 2011. *United States v. Harcum*, 457 Fed. Appx. 343 (4th Cir. Dec. 15, 2011).

However, since then, the Fourth Circuit has reversed course, following the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013). In *Descamps*, the Supreme Court held when a prior offense is missing an element necessary to qualify as a "violent

felony" under the ACCA, the offense is indivisible and can never qualify as a "violent felony" – regardless of the underlying facts of the case.  On October 1, 2013, the Fourth Circuit, in *United States v. Royal*, 731 F.3d 333, 340-42 (4th Cir. 2013), relying on *Descamps*, held that Maryland second degree assault is an indivisible offense that can never qualify as an ACCA predicate because it is missing the elements necessary to qualify as a "violent felony."

This petition follows.

## ARGUMENT

Under 28 U.S.C. § 2255(a), a defendant is entitled to resentencing when his original sentence was imposed "in violation of the Constitution or laws of the United States," or is "in excess of the maximum authorized by law."  Because Mr. Harcum's prior conviction no longer qualifies as a "violent felony" in light of *Descamps v. United States,* 133 S. Ct. 2276 (2013) and *United States v. Royal*, 731 F.3d 333, 340-42 (4th Cir. 2013), he is now serving an erroneous Armed Career Criminal Act sentence that is in excess of the 10-year statutory maximum authorized for his offense of conviction and that violates due process and the laws of the United States.

Moreover, Mr. Harcum has filed a timely petition under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Descamps* – a ruling which controls the outcome here and established a "newly recognized" right that is "retroactively applicable to cases on collateral review."

I.    **Under *Descamps v. United States*, a Prior Offense That Is Missing an Element Necessary to Constitute a "Violent Felony" under the Armed Career Criminal Act (ACCA), Can Never Qualify as an ACCA Predicate.**

Under the ACCA, a prior offense qualifies as a "violent felony" if it satisfies the following definition:

> (B) The term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force[1] against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e).

In determining whether a prior conviction qualifies as a "violent felony" under the ACCA, sentencing courts must employ the categorical approach. This means "[s]entencing courts may look only to statutory definitions – *i.e., the elements* – of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Descamps*, 133 S. Ct. at 2283 (emphasis added) (internal citations and quotation marks omitted). "If the relevant statute has the same elements as the [applicable ACCA 'violent felony' definition], then the prior conviction can serve as an ACCA predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is necessarily guilty of all the ['violent felony'] elements." *Id.* (internal citations and quotation marks omitted).

---

[1]    "Force" means "violent force", i.e. ""violent force," i.e., "strong physical force" that is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

At the same time, in a "narrow range of cases," sentencing courts may apply what is known as the "modified categorical approach" and look to a limited class of documents from the prior case to determine whether the prior conviction qualifies as a "violent felony." *Id.* at 2283-84. Prior to *Descamps*, it was unclear as to when the modified categorical approach applied. However, "[i]n *Descamps*, the Supreme Court recently clarified whether courts may apply the modified categorical approach to assess, for ACCA sentencing enhancement purposes, the violent nature of a defendant's prior conviction under an indivisible criminal statute (*i.e.*, one that does not set out elements of the offense in the alternative, but which may nevertheless broadly criminalize qualitatively different categories of conduct.)." *Royal*, 731 F.3d at 340. Answering that question in the negative, the Court held that when a prior offense is missing an element necessary to constitute a "violent felony" under the ACCA, the offense is indivisible and can never qualify as a "violent felony," even if the offense could be factually committed in a violent manner. *Descamps*, 133 S. Ct. at 2283. The Court explained that "the modified categorical approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Id.* In other words, the *Descamps* Court held that the modified categorical approach only applies when a prior offense has alternative elements – some which match the ACCA "violent felony" definition and some which do not. Only then can a federal sentencing court review documents in the prior case "to determine which of the statute's alternative elements formed the basis of the defendant's prior conviction." *Id.* at 2284.

In *Descamps,* at issue was whether a prior conviction under a California burglary statute (California Penal Code § 459) constituted a generic burglary (an "unlawful or unprivileged entry into, or remaining in, a building or structure with intent to commit a crime") under the ACCA.

6

*Descamps,* 133 S. Ct. at 2282-83 (citation omitted).   The California statute was missing the generic burglary element of unlawful entry.   Nonetheless, the federal sentencing court applied a fact-driven modified categorical approach.   The court did so by relying on the facts in the California plea colloquy to conclude that Mr. Descamps actually committed a generic burglary by breaking and entering a grocery store.  *Id.* at 2282.   The Ninth Circuit affirmed the district court's ruling.  *Id.*   The Supreme Court outright rejected the Ninth Circuit's approach and found that federal sentencing courts must follow an element-centric framework, in determining whether prior convictions qualify as ACCA "violent felonies."  *Id.* at 2287.

The Court explained that "Descamps may (or may not) have broken and entered, and so committed generic burglary.  But [the California burglary statute] – the crime of which he was convicted – does not require the factfinder (whether jury or judge) to make that determination. Because generic unlawful entry is not an element, or an alternative element, of [the California burglary statute], a conviction under the statute is never for generic burglary."  *Id.* at 2293.   The Court further explained that the district court and the Ninth Circuit "erred in invoking the modified categorical approach to look behind Descamps' conviction in search of record evidence that he actually committed the generic offense."  *Id.*   The Court then concluded that "[t]he modified categorical approach does not authorize a sentencing court to substitute such a facts-based inquiry for an elements-based one.  A court may use the modified categorical approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction."  *Id.*

In arriving at this holding, the Court pronounced that "the modified categorical approach [] acts not as an exception [to the categorical approach,] but instead as a tool.  It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime.

7

And it preserves the categorical approach's basic method: comparing those elements with the generic offense's.  All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different . . . crimes." *Id.* at 2285 (internal quotation marks and citation omitted).  The Court reinforced that "[i]f at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of.  That is the job . . . of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." *Id.*

The *Descamps* Court cautioned that merely because an offense can be committed by different multiple factual methods – some which equate to a "violent felony" – does not mean the statute is divisible with alternative elements triggering the modified categorical approach. *Id.* at 2290-91.  Otherwise, "every element of every statute can be imaginatively transformed . . . so that every crime is seen as containing an infinite number of sub-crimes corresponding to all the possible ways an individual can commit it.  (Think: Professor Plum, in the ballroom, with the candlestick?; Colonel Mustard, in the conservatory, with the rope, on a snowy day, to cover up his affair with Mrs. Peacock?)." *Id.* (internal quotation marks and citation omitted).

The Court further expounded, "If a sentencing court, as the Ninth Circuit holds, can compare each of those implied . . . means of commission to the generic ACCA offense, then the categorical approach is at an end.  At that point, the court is merely asking whether a particular set of facts leading to a conviction conforms to a generic ACCA offense." *Id.* at 2291.  The Supreme Court expressed that such factual inquiry is "forbidden." *Id.* "Courts may *modify* the categorical approach to accommodate alternative statutory definitions.  They may not, by

8

pretending that every fact pattern is an implied statutory definition, convert that approach into its opposite." *Id.* (internal quotation marks and citation omitted).

As further detailed below, applying *Descamps* to Mr. Harcum's case requires the conclusion that his prior Maryland second degree assault conviction – an indivisible statute that is missing "violent felony" elements– categorically fails to qualify as an ACCA predicate crime.

**II.    As the Fourth Circuit Recently Held in *United States v. Royal*, Maryland Second Degree Assault Can Never Be Subject to the Modified Categorical Approach and Qualify as an ACCA "Violent Felony" under *Descamps* Because it Is an Indivisible Offense That Is Missing the Elements Necessary to Constitute a "Violent Felony."**

Before *Descamps*, the Fourth Circuit, in *United States v. Kirksey*, 138 F.3d 120 (4th Cir. 1998), *United States v. Coleman*, 158 F.3d 199 (4th Cir. 1998) (en banc),  and several other cases had repeatedly held that a federal sentencing court could apply the modified categorical approach and consider the facts of the individual case, as alleged in certain documents, to determine whether a prior offense for Maryland second degree assault constituted a "violent felony." *Coleman*, 158 F.3d at 201-02; *Kirksey,* 138 F.3d at 126.

However, these cases are no longer good law.  They cannot be reconciled with *Descamps*, as the Fourth Circuit recently made clear in *Royal.*  In *Royal*, 731 F.3d at 340-42, the Fourth Circuit held that under *Descamps*' elements-driven holding, Maryland second degree assault can never qualify as a "violent felony" under the ACCA.  The Court reasoned that Maryland second degree assault is an indivisible offense, which is missing the elements necessary to qualify as a "violent felony." *Id.* at *7.  The Court explained that because "Maryland's second-degree assault statute reaches any unlawful touching, whether violent or nonviolent and no matter how slight," a conviction under the statute categorically fails to qualify as a "violent felony" supporting an

ACCA enhancement.  *Id.* (citation omitted).  Thus, Mr. Harcum's prior conviction can no longer

be deemed a "violent felony," and Mr. Harcum  is not an armed career criminal.

**III.     Mr. Harcum is Entitled to Habeas Relief Because His Current ACCA Sentence is in Excess of the Statutory Maximum, Violates Due Process, and Results in a Fundamental Miscarriage of Justice.**

Because Mr. Harcum is no longer an armed career criminal, his ACCA sentence is now in

excess of the statutory maximum sentence of 10 years for his felon-in-possession of a gun

conviction under 18 U.S.C. § 922(g).  *See* 18 U.S.C. § 924(a)(2).  Therefore, it is a *per se* illegal

sentence that this Court has no authority to keep in tact.  *See Deroo v. United States*, 223 F.3d

919, 923, 926 (8th Cir. 2000) (sua sponte vacating erroneous ACCA sentence in a federal habeas

appeal because it exceeded statutory maximum, and therefore, was illegal); *United States v.

Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (sentence outside of statutory maximum is illegal, and

thus can never be upheld); *United States v. Lemasters*, 403 F.3d 216, 220 n. 2 (4th Cir. 2002)

(same); *United States v. General*, 278 F.3d 389, 399 (4th Cir. 2002) (same); *see also United

States v. Bushert*, 997 F.2d 1343, 1350 n. 18 (11th Cir. 1993) ("it is both axiomatic and

jurisdictional that a court of the United States may not impose a penalty for a crime beyond that

which is authorized by statute").

Moreover, as the Tenth Circuit held in *United States v. Shipp*, 589 F.3d 1084 (10th Cir.

2009), an erroneous ACCA sentence that exceeds the statutory maximum is not only illegal, but

violates due process and results in a fundamental miscarriage of justice:

> Mr. Shipp does not constitute an "armed career criminal" for purposes of the
> ACCA and thus he received "a punishment that the law cannot impose on him."
> *See Schriro*, 542 U.S. at 353, 124 S. Ct. 2159.  Where, as here, Mr. Shipp was
> sentenced beyond the statutory maximum for his offense of conviction, his due
> process rights were violated.  "There can be no room for doubt that such a
> circumstance inherently results in a complete miscarriage of justice and presents

10

> exceptional circumstances that justify collateral relief. . . . "  *Davis*, 417 U.S. at
> 346-47, 94 S. Ct. 2298.

*Id.* at 1091; *see also see also United States v. Tucker*, 404 U.S. 443, 592 (1972) (sentence based on invalid convictions was "sentence founded at least in part upon misinformation of constitutional magnitude"); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (a sentence formed "on the basis of assumptions concerning [one's] criminal record which [are] materially untrue" is "inconsistent with due process of law."); *Spencer v. United States*, 727 F.3d 1076, 1089 (11th Cir. 2013)(defendant's erroneous career offender sentence resulted in "fundamental defect that inherently results in a complete miscarriage of justice and presents exceptional circumstances where the need for a post-conviction remedy is apparent"); *Narvaez v. United States*, 674 F.3d 621, 630 (7th Cir. 2011) (defendant's erroneous career offender sentence resulted in miscarriage of justice even though he was not subject to sentence beyond the statutory maximum)*; United States v. United States v. Grier*, 475 F.3d 556, 573 (3d Cir. 2007) ("due process requires [ ] that the sentence for the crime of conviction not exceed the statutory maximum").  For these same reasons, Mr. Harcum's ACCA sentence is also unconstitutional and has resulted in a miscarriage of justice.

## IV.    The Petition Is Timely under 28 U.S.C. § 2225(f)(3).

The petition here is timely under section 2255(f)(3).  That section provides that a one-year limitations period runs from the "date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  *Descamps* was decided on June 20, 2013, and the petition was filed on December 21, 2013, within one year of the decision in *Descamps.  See Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (Section

2255(f)(3) runs from the date on which the Supreme Court recognizes the new right.); *United States v. Mathur*, 685 F.3d 396, 398 (4ᵗʰ Cir. 2012). Because *Descamps* established a "newly recognized" right that is "retroactively applicable to cases on collateral review," the petition is timely under section 2255(f)(3).

### A.   *Descamps* Established A Newly Recognized Right.

The first requirement of section 2255(f)(3) is satisfied here because the right at issue in *Descamps* was "newly recognized by the Supreme Court." A right is "newly recognized" if it is a "new" right for purposes of retroactivity doctrine, *i.e.*, reasonable jurists considering the claim would not have felt compelled by precedent to rule in the defendant's favor.[2] Section 2255(f)(3) concerns the availability of "retroactive[]" relief, and was enacted against the backdrop of years of Supreme Court precedent on retroactivity that established a clear meaning to the phrase "new" right. *See Caspari v. Bohlen*, 510 U.S. 383, 389-90 (1994) (collecting *Teague* cases). By using the phrase "new[] right" in a provision addressing the availability of retroactive relief, Congress plainly adopted the well-settled meaning that the phrase "new[] right" has in retroactivity

---

[2]   The Fourth Circuit has previously indicated that the Supreme Court's retroactivity precedents essentially guide the question of whether a right is "newly recognized" under section 2255(f)(3). *See United States v. Hopkins*, 268 F.3d 222, 225 n.2 (4ᵗʰ Cir. 2001) ("Because this case deals with the issue of a 'newly recognized' right, rather than the retroactivity of a new constitutional rule, the Supreme Court's decision in *Teague v. Lane* . . . is not controlling. Retroactivity of new rules is a narrower concept than the initial recognition of new rights because the former is limited to constitutional claims. We nonetheless find *Teague* instructive. It teaches that 'a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government …. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction becomes final." (quoting *Teague v. Lane*, 489 U.S. at 301)). Other circuits have more explicitly adopted *Teague v. Lane*'s test for what constitutes a "new" right to determine whether a right is "newly recognized" under section 2255(f)(3). *E.g.*, *Figuerero-Sanchez v. United States*, 678 F.3d 1203, 1207-08 (11ᵗʰ Cir. 2012).

doctrine.[3]  *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent.  Given the history and precedent surrounding the use of the word 'discovery' … the reasons for making this assumption are particularly strong here.") (citations omitted).  Therefore, a "newly recognized" right under section 2255(f)(3) refers to a right that is "new" for purposes of retroactivity principles.  Under retroactivity doctrine, a right is new unless "the rule … was *dictated* by then-existing precedent—whether, that is, the unlawfulness of [the defendant's] conviction was apparent to all reasonable jurists."  *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997).  "In other words, a rule is 'new' if reasonable jurists considering the claim would not 'have felt *compelled* by existing precedent' to rule in [the defendant's] favor." *Smith v. Moore*, 137 F.3d 808, 820 (4th Cir. 1998).

*Descamps* is plainly a new right in this sense.  The issue in *Descamps* was a novel question about the threshold applicability of the Court's prior precedents interpreting the ACCA: The Court had to decide whether the categorical approach, as opposed to the modified categorical approach, applied to indivisible statutes that cover more than the generic crimes listed in the ACCA but do not have alternative elements – some which match the ACCA definition of "violent felony" and some which do not.  *See Descamps*, 133 S. Ct. at 2283-2285.  Under the categorical approach, a court can look only to the elements of the offense of conviction to

---

[3]  The inference that Congress adopted the established meaning of the phrase "new[] right" is particularly strong where, as here, the phrase "new[] right" is a legal term of art in the context of retroactivity.  *See McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991) ("In the absence of contrary indication, we assume that when a statute uses such a term, Congress intended it to have its established meaning.").  Moreover, the Supreme Court has already determined that Congress adopted other aspects of the Court's retroactivity jurisprudence in the AEDPA even where Congress did not use well-settled legal terms of art.  *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 411 (2000) ("With one caveat, whatever would qualify as an old rule under our *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1).") (opinion of the O'Connor, J., for the Court).

determine whether a defendant has been convicted of a "violent felony" under the ACCA, whereas under the modified categorical approach, a court can consult additional documents to determine whether a defendant has been convicted of a "violent felony." By announcing whether the categorical approach, as opposed to the modified categorical approach, applies where a defendant has been convicted under a broad, indivisible statute that is lacking ACCA "violent felony" elements, *Descamps* was not a mere application of the Court's prior precedents, but a new principle of law. *See Chaidez v. United States*, 133 S. Ct. 1103, 1108 (2013) (*Padilla* is new rule because "prior to asking *how* the *Strickland* test applied …, *Padilla* asked *whether* the *Strickland* test applied").

### 1. Prior to *Descamps*, reasonable jurists would not have felt compelled by then-existing precedent to rule in the defendant's favor.

Prior to *Descamps*, reasonable jurists would not have felt compelled by then-existing precedent to hold, as the Court did in *Descamps*, that the modified categorical approach does not apply to indivisible statutes that are missing elements necessary to constitute a generic crime. *Descamps* relied on two Supreme Court cases that construed the relevant ACCA provision, *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005),[4] but neither precedent compelled the outcome in *Descamps*. *Taylor* was primarily concerned with a different question—the meaning of the word "burglary" under the ACCA—and only alluded in one paragraph to the possibility that the question at issue in *Descamps* would ever arise. *Taylor* interpreted the word "burglary" under the ACCA and held that the phrase had its generic

---

[4]   *Descamps* also briefly referenced *Nijhawan v. Holder*, 557 U.S. 29 (2009), and *Johnson v. United States*, 559 U.S. 133 (2010). *Nijhawan*, however, interpreted a provision of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii), and *Johnson* was primarily concerned with the meaning of "physical force" in the first clause of the ACCA, § 924(e)(2)(B)(i).

meaning.  *See* 495 U.S. at 599 ("We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime … having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.").  *Taylor* itself described the question in the case as "the meaning of the word 'burglary' as it is used in … the Career Criminals Amendments Act of 1986."  *Id.* at 577.  *Taylor* therefore was not primarily concerned with how to apply this definition to various state statutes that have different elements.  *See* 495 U.S. at  599 ("There remains the problem of applying this conclusion.").

   *Taylor* did, however, provide some guidance on this issue.  The opinion suggested that, to determine whether a defendant has been convicted of a "violent felony" under the ACCA, sentencing courts should, as a general rule, "look only to the fact of conviction and the statutory definition of the prior offense."  495 U.S. at 602.  But *Taylor* also stated that "[t]his categorical approach *may*" be subject to exceptions, such as "cases where a jury was actually required to find all the elements of generic burglary."  *Id.* (emphasis added).  To illustrate this exception, *Taylor* hypothesized a state burglary statute that included entry of an automobile as well as a building. *Id.* at 602; *see Descamps*, 133 S. Ct. at 2283-84 ("[W]e hypothesized a statute with alternative elements.").  In cases such as this, *Taylor* acknowledged, a sentencing court may look beyond the statutory elements to "the charging paper and jury instructions."  *Descamps*, 133 S. Ct. at 2284. But *Taylor* did not definitively answer the question at issue in *Descamps*, namely whether this could also be true in some cases where a defendant was convicted under a statute that, *without alternative elements*, criminalized a broader range of conduct than the generic offense.

   *Shepard* is even further removed from the question at issue in *Descamps*.  *Shepard assumed* that *Taylor*'s modified categorical approach applied, whereas the question at issue in

*Descamps* was *whether* the modified categorical approach applied in the first instance.  In other words, *Shepard* proceeded under the assumption that the sentencing court properly consulted an additional set of documents aside from the fact of conviction and the statutory definition of the prior offense, and the only question in *Shepard* was what additional set of documents the court should have consulted.  *See* 544 U.S. at 20 ("Our job, then, is to find the right analogs for applying the *Taylor* rule to pleaded cases."); *id.* at 26 ("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant …, or to some comparable judicial record of this information.").

> **2.**       **Justice Alito's strong dissent in *Descamps* is a clear indication that prior reasonable jurists differed on the applicability of the modified categorical approach.**

There are several other clear indications that the rule in *Descamps* is new, including Justice Alito's strong dissent in that case.  *See Beard v. Banks*, 542 U.S. 406, 415-16 (2002) (noting presence of dissents indicates that "reasonable jurists differed" and therefore that announced rule is new); *United States v. Morris*, 429 F.3d 65, 71 (4th Cir. 2005) ("[T]he fact that these Justices dissented supports the conclusion that the … rule is new.").  In his dissent, Justice Alito examined the statutes at issue in the Court's prior precedents and concluded that, in those cases, "the Court thought that the modified categorical approach could be used in relation to statutes that may not have been divisible."  *Descamps*, 133 S. Ct. at 2297 (Alito, J., dissenting).  "Far from mandating the Court's approach," Justice Alito wrote, "these decisions support [the] practical understanding of the modified categorical approach" embodied in his dissent.  *Id.* at 2299 (Alito, J., dissenting).  Indeed, Justice Alito maintained not only that the majority position

was not *compelled* by the Court's precedents, but that the Court's precedents compelled the *opposite* rule than what the Court announced in *Descamps*. *See id.* at 2298-2299.

> **3.** **The division among the federal courts of appeal on the question presented in *Descamps* further indicates that the rule announced in *Descamps* is new.**

The division among the federal courts of appeal on the question presented in *Descamps* further indicates that the rule announced in *Descamps* is new. *See Caspari*, 510 U.S. at 395 (novelty of rule evidenced by "[t]wo Federal Courts of Appeals and several state courts … reach[ing] conflicting holdings on the issue"); *United States v. Martinez*, 139 F.3d 412, 417 (4th Cir. 1998) (novelty of rule evidenced by "*seven* circuit courts of appeals" reaching contrary result). Prior to *Descamps*, the courts of appeal were divided on the pertinent question, *see Descamps*, 133 S. Ct. at 2283 ("We granted certiorari to resolve a Circuit split on whether the modified categorical approach applies to statutes like § 459 that contain a single, 'indivisible' set of elements sweeping more broadly than the corresponding generic offense.") (citation omitted), with at least two courts of appeals having held, contrary to the rule later established in *Descamps*, that the modified categorical approach applied to broad, indivisible statutes. *See, e.g.*, *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc); *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006). Moreover, Chief Judge Easterbrook, joined by Judges Posner and Tinder, advocated applying the modified categorical approach in cases where the defendant was not convicted under a divisible statute, contrary to the rule in *Descamps*. *See United States v. Woods*, 576 F.3d 400, 414 (7th Cir. 2009) (Easterbrook, J., dissenting). "That the outcome in [*Descamps*] was susceptible to debate among reasonable minds is evidenced … by the differing positions taken by the judges of the[se] Courts of Appeals." *Butler v. McKellar*, 494 U.S. 407, 415 (1995)).

17

### 4.     The Fourth Circuit's recent ACCA cases confirm *Descamps'* novelty.

Additionally, the Fourth Circuit's recent ACCA cases confirm *Descamps*' novelty. Relying on *Descamps*, the Fourth Circuit reversed course and held that Maryland's second degree assault offense does not qualify as a "violent felony" under the ACCA.  *See Royal*, 731 F.3d at 340-42.  As earlier referenced, the Fourth Circuit had previously held that a Maryland second degree assault  qualified as a "violent felony."  *See Kirksey*, 138 F.3d 120; *Coleman*, 158 F.3d 199.  In *Coleman*, the *en banc* court explained that "because one of the ways in which a Maryland common-law assault can be committed involves the use, attempted use, or threatened use of physical force … the district court *properly looked beyond the fact of conviction and the elements of the offense* to determine whether the particular offense … was a violent felony."  158 F.3d at 202 (en banc).  Yet this is precisely what *Descamps* forbade—looking beyond the elements of an offense where a defendant has been convicted of a crime under a broad, indivisible offense that is missing an element necessary to constitute a "violent felony."  *See Royal*, 731 F.3d at 340 ("*Descamps* … clarified whether courts may apply the modified categorical approach to assess … the violent nature of a defendant's prior conviction under an indivisible criminal statute.").  That *Descamps* caused the Fourth Circuit to reverse itself on an important ACCA question confirms that the *Descamps* rule is new.

### 5.     Certain language in *Descamps* does not defeat its novelty.

Finally, *Descamps*' statements that prior case law "all but resolve[d]" the case do not suggest the rule announced in *Descamps* is not new.  133 S. Ct. at 2283.  *Butler v. McKellar* cautioned that "the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague*.  Courts frequently view

18

their decisions as being 'controlled' or 'governed' by prior opinions even when aware of reasonable contrary conclusions reached by other courts." 494 U.S. 407, 415 (1990). *See also Martinez*, 139 F.3d at 418; *O'Dell v. Netherland*, 95 F.3d 1214, 1223-24 (4th Cir. 1996) (en banc), *aff'd*, 521 U.S. 151 (1997) ("[D]icta used in opinions to underscore their faithfulness to precedent … [is] not . . . binding upon the separate question of whether they announced a new rule under *Teague*."). Moreover, *Descamps* elsewhere acknowledged that the Court's prior ACCA precedents did not squarely resolve the case. *Descamps* noted that *Taylor* only "hypothesized" one kind of statute that would permit a court to consider documents aside from the fact of conviction and the statute underlying the conviction. *See* 133 S. Ct. at 2283-84; *id.* at 2284 ("In *Shepard* . . . the hypothetical we posted in *Taylor* became real."). *Descamps* also recognized that *Shepard* held only that "*Taylor*'s categorical approach applies not just to jury verdicts," and "authorized sentencing courts to scrutinize a restricted set of materials" to determine the defendant's crime of conviction. 133 S. Ct. at 2284.

### B.    *Descamps* Is "Retroactively Applicable To Cases On Collateral Review" Because It is Substantive.

The second requirement of section 2255(f)(3) is also satisfied here because *Descamps* is "retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). *Descamps* is retroactive because it announced a substantive rule by limiting the category of persons whom the law punishes as armed career criminals. And defense counsel understands that the Solicitor General's Office has issued a memorandum to all U.S. Attorney's Offices stating the same and advising them not to contest the retroactive application of *Descamps*. Indeed, following this direction, the U.S. Attorney's Office in the Southern District of California conceded *Descamps'* retroactivity and the district court agreed. *See United States v. Isidoro*, 2013 WL 5353001, at *2

(S.D. Cal. Sept. 30, 2013) (granting § 2255 relief upon agreeing with U.S. Attorney that *Descamps* is retroactive). Thus, defense counsel does not expect the U.S. Attorney's Office to flout the Solicitor General's advice and contest *Descamps*' retroactivity. Nonetheless, we include the discussion below for the Court's benefit.

Under *Teague v. Lane*, 489 U.S. 288, a new rule applies retroactively if the rule is substantive. *See Schriro v. Summerlin* , 542 U.S. 348, 351 (2004) ("As to convictions that are already final … [n]ew *substantive* rules generally apply retroactively."). "Substantive rules apply retroactively because there is 'a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him.'" *Miller v. United States*, 2013 WL 4441547, __ F.3d __, at *4 (4th Cir. 2013). "A new rule is substantive 'if it alters the range of conduct or the class of persons that the law punishes." *Id.* (quoting *Schriro*, 542 U.S. at 353). "New substantive rules … include[] decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro*, 542 U.S. at 351-352 (citation omitted). By contrast, "[n]ew rules of procedure … do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id.* at 352.

1.    ***Descamps*** **announced a substantive rule because the decision interpreted the scope of a criminal statute, and in doing so, narrowed the class of persons whom the law could punish as armed career criminals.**

*Descamps* announced a substantive rule because the decision interpreted the scope of a criminal statute and, in doing so, narrowed the class of persons whom the law could punish as

armed career criminals.   Federal law imposes a term of ten years on certain classes of persons

who possess or otherwise use a firearm.   *See* 18 U.S.C. § 922(g).   But the ACCA, and

specifically the provision at issue in *Descamps*, imposes an *additional* term of five years on those

persons listed in § 922(g) that have "three previous convictions … for a violent felony or for a

serious drug offense."  18 U.S.C. § 924(e)(1).  *Descamps* narrowed the scope of what constitutes

a "violent felony," and therefore changed the category of persons who are armed career criminals

and whom the law can sentence to an additional term of years beyond what is specified in §

924(a)(2).    *Descamps* therefore applies retroactively because, after *Descamps*, " there is 'a

significant risk that a defendant … faces a punishment that the law cannot impose upon him.'"

*Miller v. United States*, 2013 WL 4441547, at *4.

> **2.      *Descamps* is similar to the Supreme Court's decisions in *Begay v.
> United States* and *Chambers v. United States* – decisions which every
> Circuit has concluded are substantive and thus, retroactive.**

        In this respect, *Descamps* is similar to the Supreme Court's recent prior decisions

narrowing the scope of the ACCA—*Begay v. United States*, 553 U.S. 137 (2008), and *Chambers

v. United States*, 555 U.S. 122 (2009).   And every Circuit to have addressed the question has

concluded these decisions are substantive and therefore retroactively applicable on collateral

review.   Both *Begay* and *Chambers* construed the phrase "violent felony" under the ACCA and

limited the types of convictions that render a defendant eligible for the ACCA sentencing

enhancement.   *Begay* held that, to qualify as a "violent felony," an offense must be "roughly

similar, in kind" to the enumerated offenses, which "typically involve purposeful, violent, and

aggressive conduct."  553 U.S. at 143, 145-46.  *Chambers* held that failure to report for penal

confinement is not a "violent felony" because it is "a form of inaction, a far cry from the

purposeful, violent, and aggressive conduct" of the enumerated offenses.   555 U.S. at 128

(quotation marks omitted).  Because these decisions limit a defendant's eligibility for the ACCA sentencing enhancement, every Circuit has held that *Begay* and *Chambers* are substantive and therefore retroactively applicable to cases on collateral review.  *See, e.g.*, *Spencer v. United States*, 727 F.3d at 1096 *(Begay)*; *Narvaez*, 674 F.3d at 623 (*Begay* and *Chambers*); *Jones v. United States*. 689 F.3d 621, 625 (6th Cir. 2012) (*Begay*); *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010) (*Begay*); *Lindsey v. United States*, 615 F.3d 998, 1000 (8th Cir. 2010) (*Begay*); *Shipp*, 589 F.3d at 1090 (*Chambers*).   As the Seventh Circuit reasoned with respect to *Begay*, "the application of the ACCA imposed, at a minimum, five years of imprisonment that the law otherwise could not impose upon him under his statute of conviction.  Such an increase in punishment is certainly a substantive liability."  *Welch*, 604 F.3d at 415.  The same is true for *Descamps*—the decision altered whether the law could impose on defendants convicted under broad, indivisible statutes an additional five-year term of imprisonment.

### 3.   Recent Fourth Circuit precedent confirms that *Descamps* is substantive, and thus retroactive.

The Fourth Circuit's prior cases confirm that *Descamps* is substantive and therefore retroactively applicable.  In *Miller*, 2013 WL 4441547, the Fourth Circuit held that its prior decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), was substantive.  *Miller* explained that, under *Simmons*, certain "felony convictions do not qualify as predicate felonies for purposes of federal law, and those defendants are actually innocent of the § 922(g)(1) offense of which they were convicted."  *Id.* at *4.  Because *Simmons* altered 'the class of persons that the law punishes,' [it] announced a substantive rule that is retroactively applicable."  *Id.  Descamps*, like *Simmons*, "narrowed the scope of [§ 924(e)] by establishing that it does not reach defendants

whose prior convictions" are under excessively broad indivisible statutes, and thereby "altered 'the class of persons that the law punishes.'"[5] *Id.*

To be sure, the ACCA involves a sentencing enhancement, and *Descamps* does not render the underlying conduct—possession a firearm by certain classes of persons—no longer criminal. But *Descamps* is nonetheless a substantive rule because after *Descamps* a defendant "faces a punishment that the law cannot impose upon him.'" *Miller*, 2013 WL 4441547, at *4. The additional years provided for under the ACCA are "certainly a substantive liability." *Welch*, 604 F.3d at 415.

To the extent the decision in *Descamps* has some procedural aspects, it nonetheless qualifies as a substantive rule as that phrase is used in retroactivity doctrine. *Descamps* is plainly not a procedural rule. "[R]ules of procedure … merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Schriro*, 542 U.S. at 352. But *Descamps* did not concern the procedure by which a defendant was convicted; *Descamps* changed whether a defendant's prior convictions qualify as "violent felonies" that render him an armed career criminal subject to the ACCA's sentencing enhancement. The fact that *Descamps* describes a method for determining whether a conviction constitutes a "violent felony" does not change the fact that the decision interprets what

---

[5]      For this reason, the Fourth Circuit's decision in *United States v. Powell* is inapposite. 691 F.3d 554 (4ᵗʰ Cir. 2012). *Powell* held that the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), did not apply retroactively. *Carachuri-Rosendo* addressed the scope of "an INA condition that prohibits discretionary cancellation of an order of removal." *Powell*, 691 F.3d at 558. The INA, however, is a *civil* statute. *See id.* at 559. *Powell* therefore reasoned that "[t]he Supreme Court's holding in *Carachuri* altered neither 'the range of conduct' nor the 'class of persons' that could be punished under any criminal statute.". *Id.*; *see also id.* at 559-60 ("*Carachuri* … did not alter the range of conduct or the class of persons subject to criminal punishment."). *Descamps*, unlike *Carachuri*, altered the class of persons that can be punished under the ACCA, and *Powell* therefore does not suggest *Descamps* is not substantive.

constitutes a "violent felony" and therefore alters the range of punishment and the class of persons to be punished under the ACCA.

## CONCLUSION

For the reasons set forth above, Mr. Harcum respectfully asks this Court to immediately vacate his illegal sentence and schedule a new sentencing hearing so that he can be resentenced without application of the ACCA.  Mr. Harcum's Sentencing Guidelines range under a non-ACCA sentence is 100 to 125 months (offense level 24, criminal history category VI).


Respectfully submitted,

JAMES WYDA
Federal Public Defender


_____/s/_____
PARESH .S PATEL,
Appellate Attorney
6411 Ivy Lane, Ste. 710
Greenbelt, Maryland
(301) 344-0600

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of December, a copy of the foregoing Motion to Correct Sentence Under 28 U.S.C. §2255 was delivered via electronic filing to Michael Hanlon, Assistant United States Attorney, Office of the United States Attorney, 36 South Charles Street, 4th Floor, Baltimore, Maryland 21201-2692.


_____/s/_____
PARESH S. PATEL
Appellate Attorney